IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LYRIC JENE' PATRICK,**

    **Plaintiff,**

                                      Civil Action 2:18-cv-221
                                      Judge Michael H. Watson
    **v.**                                Chief Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lyric Patrick ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 8). For the following reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the ALJ for further consideration consistent with this Report and Recommendation.

### I. BACKGROUND

Plaintiff applied for supplemental security income on August 26, 2014, while she was still a minor.[1] (R. at 153.) Plaintiff turned 18 several months later. (*Id*.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 96, 99.) Upon request, a hearing was held on March 10, 2017, in which Plaintiff, represented by counsel, appeared and testified. (R. at 43–61.) A vocational expert also appeared and testified at the hearing. (*Id*.) On May 26, 2017, Administrative Law Judge Thomas L. Wang ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 13–42.) On January 11, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 3.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she experiences panic attacks one to two times per day, depending on whether she leaves the house that day. (R. at 47.) Since starting a new medicine a few months prior to the hearing, Plaintiff stated that she has a panic attack about once per day. (R. at 48.) During a panic attack, Plaintiff gets sweaty, nervous, and her chest hurts. (*Id.*) Each panic attack generally lasts about 25 minutes, during which time Plaintiff hyperventilates and sometimes gets dizzy. (R. at 50–51.) Plaintiff stated that she uses a stuffed elephant to help her calm down from a panic attack. (R. at 51.)

Plaintiff testified that she does not like to leave her house and that she spends most of her days sleeping or playing with her sister. (R. at 49.) She does enjoy going to the movies or to the mall with her mother or grandmother once or twice every couple of months. (R. at 49–51.)

---

[1] In her Complaint, Plaintiff alleges that Defendant denied her application for Social Security Disability benefits. (ECF No. 1.) The record confirms, however, that the Commissioner denied her application for supplemental security income.

Plaintiff testified that she does not feel like getting out of bed usually three or four days per week due to depression. (R. at 53.)

Plaintiff indicated that she experiences auditory hallucinations during which she hears multiple voices that talk over each other. (R. at 50.) Plaintiff experiences these hallucinations during a panic attack and also randomly during the day. (*Id.*) Plaintiff experiences the following nervous ticks: rubbing her ears, sucking her fingers, and playing with her fingers. (R. at 54.)

### B. Vocational Expert Testimony

Carl Hartung testified as the vocational expert ("VE") at the March 2017 hearing. (R. at 55–60.) Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could perform three jobs in the national economy: sexton, laboratory equipment cleaner, or kitchen helper. (R. at 56.) The VE testified that the following conditions would be work preclusive: requiring four 15-minute breaks in addition to regularly scheduled breaks, being off task ten percent of the workday, one day of absenteeism per month, needing to work in isolation with a maximum of ten percent supervisor contact during the workday, and needing frequent supervision. (R. at 55–58.)

The VE testified that it is not a customary job experience for an individual to require an experienced coworker or supervisor to occasionally redirect her during the workday. (R. at 58–59.) He also testified that it would be problematic for an individual to need to be surrounded in the workplace by familiar coworkers and supervisors. (R. at 59–60.)

### III. RELEVANT MEDICAL RECORD

On April 13, 2015, Plaintiff's treating psychologist, Craig Williams, M.D., completed a Statement of Expert Evaluation for use in probate court. (R. at 703–706.) In his evaluation, Dr.

Williams recommended that Plaintiff's mother obtain guardianship over Plaintiff due to Plaintiff's mental impairments. (R. at 703.) As of the date of the evaluation, Dr. Williams had seen Plaintiff on six different occasions over the course of seven months for a total of about 5 hours. (*Id.*)

Dr. Williams found that Plaintiff was mentally impaired and diagnosed Plaintiff with attention deficit disorder (moderately severe) and autism spectrum disorder. (R. at 704.) Dr. Williams' evaluation noted impairments in Plaintiff's speech, motor behavior, thought process, affect, memory, concentration and comprehension, and judgment. (*Id.*) More specifically, Dr. Williams stated that Plaintiff has "great difficulty sustaining conversation" and has "poverty of thought." (*Id.*) He described Plaintiff's affect as "somewhat blunt," stated that she "cannot accurately produce answers involving making change for purchases," is "poor at picking up nonverbal cues," does not maintain eye contact, and "does not get the big picture regarding social situation[s]." (*Id.*) Dr. Williams noted that Plaintiff does not have any physical impairments. (R. at 705.)

Asked if Plaintiff is capable of managing her activities of daily living or making decisions concerning medical treatments, living arrangements, and diet, Dr. Williams answered "No." (*Id.*) Dr. Williams similarly stated that Plaintiff is not capable of managing her finances and property. (*Id.*) Dr. Williams opined that Plaintiff "[n]eeds too much supervision to stay on task and to prevent being lead astray by others seeking to take advantage of her." (R. at 706.)

**C. Administrative Decision**

On May 26, 2017, the ALJ issued his decision. (R. at 16–34.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 16, 2014. (R. at 21.) The ALJ found that Plaintiff has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); autism spectrum disorder; panic disorder; unspecified depressive disorder; borderline personality disorder; alcohol use disorder, moderate; and cannabis use disorder, mild. (R. at 21.) The ALJ further found that, prior to age 18, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) In analyzing the childhood functional domains, the ALJ determined that Plaintiff suffered from less than marked limitations in the domains of acquiring and using information, attending to and completing tasks, interacting with and relating to others, and caring for self. (R. at 24–28.) The ALJ further

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

determined that plaintiff experienced no limitations in the functional domains of moving about and manipulating objects and in health and physical well being. (*Id.*)

The ALJ determined that Plaintiff achieved the age of 18 in April 2015, at which time her impairments continued to remain severe, but did not meet or medically equal the severity of one of the listed impairments. (R. at 29.) The ALJ determined that Plaintiff was moderately limited in understanding, remembering or applying information, interacting with others, concentrating, persisting and maintaining pace, and adapting or managing oneself. (*Id.*)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [A] full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, and repetitive tasks. The claimant requires goal-based production work measured by end result, not pace work. The claimant will be off task 5% of the workday. The claimant requires low stress work with only occasional decision-making and occasional changes in the work setting. The claimant will have occasional interaction with the public, coworkers and supervisors.

(R. at 30.)

The ALJ determined that Plaintiff had no past relevant work. (R. at 33.) Relying on testimony from the VE, the ALJ concluded that Plaintiff remained capable of working as a sexton, a laboratory equipment cleaner, and a kitchen helper. (*Id.*) The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 34.) He therefore concluded that Plaintiff was not disabled under the Social Security Act from April 17, 2015, the day Plaintiff attained age 18, through the date of the administrative decision. (*Id.*)

### IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff does not contest the ALJ's findings under the childhood standard of disability. Rather, Plaintiff puts forth two assignments of error arguing that the ALJ erred in his weighing of the medical source opinions as to Plaintiff's Residual Functional Capacity under the adult standard of disability. First, Plaintiff contends that the ALJ erred in failing to provide any supportable explanation for his treatment of Dr. Souder's opinions, specifically regarding two work-preclusive limitations. (Plaintiff's Statement of Errors at 9–13, ECF No.11.) Plaintiff's second contention of error is that the ALJ erred in weighing the opinions of her treating physician, Dr. Williams. (*Id.* at 13–16.) As to this contention of error, the Commissioner acknowledges that the ALJ did not explicitly discuss Dr. Williams' opinions but argues that the ALJ implicitly addressed the opinion in a manner that satisfies the regulations. (Commissioner's Memorandum in Opposition at 12, ECF No. 16.) The Undersigned disagrees with the Commissioner and finds Plaintiff's second contention of error to be well-taken.[3]

In evaluating a claimant's case, the ALJ must consider all medical opinions that he or she receives. 20 C.F.R. § 416.927(c). Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

---

[3] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error. Thus, the Undersigned need not, and does not, resolve the alternative basis Plaintiff asserts supports reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d

9

> Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.

Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under Blakley and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision). When an ALJ fails to state and justify the weight he accorded to a treating source opinion, a reviewing court must remand the claim unless the ALJ's failure can be characterized as a harmless error.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ violated the good reason rule when evaluating Dr. Williams' opinions. The ALJ completely failed to discuss, weigh, or provide good reasons for rejecting Dr. Williams' opinions, specifically those contained in his Statement of Expert Evaluation, which was prepared for a probate court proceeding. (R. at 703–706.) Dr. Williams treated Plaintiff for approximately seven months, on six different occasions, spending a total of approximately five

hours with Plaintiff during his evaluations. (R. at 703.) Dr. Williams diagnosed Plaintiff with attention deficit disorder and autism spectrum disorder. (R. at 704.)

In addition to the Statement of Expert Evaluation, the record contains other examination reports from Dr. Williams from 2014 and 2015. (R. at 616–622, 716–719.) Plaintiff had a consultative appointment with Dr. Williams on September 10, 2014, during which Dr. Williams noted that she was "not able to sustain a conversation," and she "talks about having had some experiences of hearing things when no one was around." (R. at 621.) Dr. Williams diagnosed her with "Autism Spectrum Disorder with major problems in social realm, language, stereotypical movements and repetitive movements and self stimulation." (R. at 622.) After Plaintiff's November 2014 appointment with Dr. Williams, he added to his diagnoses that Plaintiff experiences "numerous environmental stresses." (R. at 620.) In his reports from December 8, 2014, and January 25, 2015, Dr. Williams adds a diagnosis of ADHD and notes major issues with social issues and communications. (R. at 616, 618.) Dr. Williams noted in May and June of 2015 that Plaintiff was making progress. (R. at 716, 718–719.)

In his April 2015 Statement of Expert Evaluation for use in probate court, Dr. Williams indicated that Plaintiff was mentally impaired based on her diagnoses of attention deficit disorder and autism spectrum disorder. (R. at 704.) Dr. Williams' evaluation noted impairments in Plaintiff's speech, motor behavior, thought process, affect, memory, concentration and comprehension, and judgment. (*Id.*) Dr. Williams represented that Plaintiff has "great difficulty sustaining conversation" and has "poverty of thought." (*Id.*) He described Plaintiff's affect as "somewhat blunt," stated that she "cannot accurately produce answers involving making change for purchases," is "poor at picking up nonverbal cues," does not maintain eye contact, and "does not get the big picture regarding social situation[s]." (*Id.*) Dr. Williams reported that Plaintiff is

11

not capable of managing her daily activities, making decision concerning medical treatments, living arrangements, diet, finances, and property. (*Id.*) Dr. Williams opined that Plaintiff "[n]eeds too much supervision to stay on task and to prevent being lead astray by others seeking to take advantage of her." (R. at 706.)

In his opinion, the ALJ discussed Dr. Williams' reports briefly while overviewing other medical reports from 2014 and 2015. (R. at 23.) Specifically, the ALJ acknowledged Dr. Williams' findings that Plaintiff experienced panic attacks, avoided eye contact, suffered from autism spectrum disorder for which he recommended psychosocial interventions, and that Dr. Williams recommended a guardianship for Plaintiff. (*Id*.) But the ALJ did not assign any weight to Dr. Williams' opinions. (R. at 16–34.) In the analysis portion of his opinion, the ALJ mentioned Dr. Williams' findings just once—noting that in May 2015, Dr. Williams found that Plaintiff was making progress. (R. at 31.)

The ALJ's failure to address these opinions violates the good reason rule. The Commissioner agrees as much, but argues that the ALJ's opinion meets an exception to the good-reason rule because it constitutes harmless error. (Commr's Mem. in Opp., ECF No. 16 at 13.)

In *Wilson,* the Sixth Circuit considered three possible scenarios that could lead the Court to a finding of harmless error. 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id*. Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id*. Finally, the Court in *Wilson* considered the possibility of a scenario "where the

12

Commissioner has met the goal of § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id*.

Here, the ALJ's violation of the good reason rule was not harmless error. First, Dr. Williams' opinions are neither "patently deficient" nor consistent with the ALJ's decision, and the Commissioner makes no attempt to argue that they are. (*See* Commr's Mem. in Opp., ECF No. 16 at 12-13.) Instead, the Commissioner argues that the ALJ met the goal of § 1527(d)(2) without complying with its procedural requirements. (*Id.* at 13.) The Undersigned disagrees.

In *Hall v. Commissioner of Social Security*, the Sixth Circuit elaborated on how an ALJ might meet the goal of § 1527(d)(2) without complying with the procedural requirements, explaining as follows:

> As applied to this case, the ALJ could have met the goal of providing good reasons by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about Hall's back pain by indirectly attacking the "supportability" of the doctor's opinion, § 404.1527(d)(3), or the "consistency" of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, see § 404.1527(d)(2). However, it is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the 1998 decision to see if it implicitly provides sufficient reasons for the rejection of Dr. Caudill's opinion regarding Hall's back, *see Wilson*, 378 F.3d at 544-45 (discussing purposes of treating-source regulations), not merely whether it indicates that the ALJ did reject Dr. Caudill's opinion.

*Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (footnotes omitted).

Thus, "the equivalent of good reasons for not adopting a treating source's opinion could perhaps be found in an ALJ's analysis of the ailment addressed by the opinion" or in the ALJ's analysis of the treating physician's other opinions. *Id*. at 464-65. Indeed, "[a]n ALJ may accomplish the goals of th[e] procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron*

13

*v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (emphasis in original) (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall*, 148 F. App'x at 464–65). In determining whether the ALJ indirectly attacked the treating physician's opinion, "courts look to the ALJ's decision itself, and not other evidence in the record." *Coldiron*, 391 F. App'x at 440.

Here, neither the ALJ's analysis of Dr. Williams' other opinions nor his analysis of Plaintiff's impairments adequately attack Dr. Williams' opinions regarding Plaintiff's social issues or his opinion that Plaintiff needs too much supervision to stay on task. The Undersigned also finds that the Court cannot engage in a meaningful review of the ALJ's rejection of Dr. Williams' opinion because (1) his reasoning was not sufficiently specific to make clear that he recognized the opinion was from a treating source and therefore due some deference, and (2) he did not explicitly discuss how each of the six factors in 20 C.F.R. § 404.1527(d)(2)-(6) either supported or undercut rejection of the opinion. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (noting that it is "rare" for the ALJ's analysis to meet "the goal of the rule even if not meeting its letter.")

Because the Undersigned cannot otherwise trace the ALJ's path of reasoning or discern what evidence the ALJ relied upon to reject the opinions of Dr. Williams, remand is required. *See Rogers*, 486 F.3d at 243 (explaining that one of the purposes of the good reason requirement is to ensure meaningful appellate review of the ALJ's application of the treating physician rule); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (finding that "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Finally, the Undersigned declines the Commissioner's invitation to weigh the evidence to conclude that substantial evidence does not support Dr. Williams' opinions. As the Sixth Circuit has recognized in similar circumstances:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion, thus, a different outcome on remand is unlikely. A procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway. To hold otherwise, and to recognize substantial evidence as a defense to noncompliance with [20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Wilson*, 378 F.3d at 546.

For these reasons, it is **RECOMMENDED** that Plaintiff's second contention of error be **SUSTAINED**.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the ALJ for further consideration consistent with this Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: October 21, 2019**     */s/ Elizabeth A. Preston Deavers*
                               **ELIZABETH A. PRESTON DEAVERS**
                               **CHIEF UNITED STATES MAGISTRATE JUDGE**